# EXHIBIT 1



September 9, 2022

Alexander Kaplan
461 Fifth Avenue | 19th Floor
New York, New York 10017
Office: 202.480.2999
alex@oandzlaw.com | www.oandzlaw.com

**By Overnight Delivery & Email**

Jill Bollettieri, Esq.
General Counsel
Post Consumer Brands LLC
20802 Kensington Blvd
Lakeville, MN 55044
j-bollettieri@postconsumerbrands.com

Re:    **Post Foods, LLC Intent-to-Use Trademark Application for OK GO!**

Dear Ms. Bollettieri:

This firm is litigation counsel to the internationally acclaimed band, OK Go. Established in 1998, OK Go has sold over one million records and achieved international fame with its ground-breaking viral music videos, which have been viewed over 550 million times and won over 120 prestigious awards. Those honors include a Grammy award, three MTV awards, two YouTube Music awards, and many in the field of advertising, such as 21 Cannes Lions awards and 12 Clio awards, among numerous others.

The acclaim and recognition of OK Go is due in substantial part to the band's work with companies and brands across many industries, including automotive, insurance, consumer electronics, and food. As you are likely aware, in 2011, OK Go collaborated with Post Foods, LLC ("Post") and appeared in a mobile content series on a platform called Bitbop to promote one of Post's cereal brands, Honey Bunches of Oats. The series, called "Honey and Joy," featured OK Go, including a performance by the band of one of its hit songs. Post's Honey Bunches of Oats YouTube channel maintains the video here:
https://www.youtube.com/watch?v=7VYirLdW98w. A Honey and Joy series trailer, which also features the band, is similarly available on YouTube, here:
http://www.youtube.com/watch?v=xi3S8eHqCKM and was promoted in a press release:
https://www.prnewswire.com/news-releases/honey-bunches-of-oats-original-sitcom-debuts-on-bitbop-mobile-tv-app-with-stellar-cast-117930559.html.

Given Post's work with OK Go, and its obvious awareness of the band and its reputation, OK Go was surprised and alarmed to see that Post has filed an intent to use trademark application with the United States Patent and Trademark Office ("USPTO") for the mark OK GO! under Application Serial No. 97394932. The mark in this application is identical to our client's distinctive name and mark, OK GO. OK Go is the owner of, among other trademarks,

United States Trademark Registration Nos. 3439835 and 3440393 for the OK GO mark, which are both incontestable.

The OK GO name and mark is well-known throughout the United States and the world, both through the band's popularity as a musical act and as a creator of viral music videos in collaboration with global brands. Sony, Mercedes Benz, Google, and Chevrolet – some of the most famous brands in the world – have teamed with OK Go to use the OK Go brand and music videos to promote their products or services. This includes a video that OK Go created for Chevrolet that was broadcast during Super Bowl XLVI and accrued 46 million views (more than the halftime show of the same event), a video for S7 Airlines featuring the band in an airplane suspended in microgravity that was viewed more than 50 million times in just two days, and OK Go's collaboration with Post's Honey Bunches of Oats cereal brand, among many others. AdAge referred to OK Go's work as, "Perhaps the best product placement ever. … The band OK Go have been among the smartest (and funniest) creators of viral media since viral media began."

As a result of the commercial success that OK Go has achieved in collaborating with brands across the spectrum of consumer products and services, the OK GO mark has developed enormous good will and is strongly linked with OK Go in the public's mind. Therefore, our client is very concerned that Post's registration of the identical mark, OK GO!, and Post's intent to use that mark in connection with its cereal brands, will cause confusion, lead to a false association of the band with Post and its products, and among, other things, suggest to consumers that OK Go is endorsing Post's products, or that Post has received OK Go's permission to use the OK GO mark and name, when, in fact, it has not, causing significant harm to OK Go, its brand, and its reputation.

Our client regards this matter with the utmost seriousness and has authorized us to take all steps necessary in any venue to protect its rights and prevent its valuable mark from infringement, including enforcement under the Lanham Act and state statutes and common law. However, OK Go would prefer to resolve this dispute amicably, and before Post begins to use the mark OK GO! in commerce. Accordingly, OK Go demands that Post provide written assurance within 10 days of the date of this letter that Post (i) has filed an express abandonment of its trademark application for the OK GO! mark; (ii) will not seek to register any mark similar to OK GO in the future; and (iii) will not use at any time now or in the future the mark OK GO in any respect, or any other mark, word, or design that is confusingly similar to the OK Go mark.

If we do not hear from you within 10 days of the date of this letter, we will assume that Post does not wish to resolve this matter amicably and we will take whatever steps are necessary to protect our client's invaluable rights.

This letter not intended to be a complete statement of the facts and circumstances surrounding this matter and is written without prejudice to any of OK Go's rights and remedies, all of which are expressly reserved.

Sincerely yours,

/s/ Alex Kaplan

Alexander Kaplan

cc:     Thomas A. Polcyn (by email:  ipdocket@thompsoncoburn.com)

# EXHIBIT 2



One US Bank Plaza
St. Louis, MO 63101

314 552 6000 main
314 552 7000 fax
thompsoncoburn.co[...]

**Thomas A. Polcyn**
314 552 6331 direct
tpolcyn@thompsoncoburn.com

September 20, 2022

**VIA E-MAIL (alex@oandzlaw.com)**

Alex Kaplan
Oppenheim + Zebrak, LLP
461 Fifth Avenue, 19th Floor
New York, New York  10017

Re:     Post Foods, LLC's Intent-to-Use Trademark Application for OK GO!;
        TC Ref. 53807-222411

Dear Alex:

As I advised by e-mail, this firm represents Post Foods, LLC in intellectual property legal matters.

We respectfully disagree with OK Go, Inc.'s claim that Post's use and registration of OK GO! for breakfast cereal and cereal-based snack foods will cause confusion or lead to a false association with OK Go, Inc.

The parties' respective goods and services are clearly unrelated, making confusion virtually impossible.  Breakfast cereal and cereal-based snack foods are not related to sound recordings, musical performances, and clothing and other merchandise typically associated with such entertainment services, and consumers are highly unlikely to assume a connection, even when such goods and services are sold under similar trademarks.

Your letter lists many occasions in which OK Go, Inc. has collaborated with owners of famous brands, such as Chevrolet, Sony and Google, to promote their products and services.  But it does not follow that OK Go, Inc.'s collaboration with famous brands renders its own OK GO trademark famous or strong.  In fact, OK GO is a very common term that is concurrently used and registered by many different parties across a spectrum of different goods and services.

The USPTO register reflects third party use and registration of OK GO and similar terms by others, including: Cytel Inc.'s registration for OK GO for clinical development software; Yongkang City's registrations for OKGO for bicycles and related ride-on toys; Yong Zhao's registration for OKAYEGO for a range of sporting goods, toys and games; and I-Tech USA's allowed application for K-GO for physical fitness equipment.

Alex Kaplan
September 20, 2022
Page 2

Beyond the register, the marketplace is also replete with concurrent use of OK GO and similar terms by various third parties, including, for example, OK-Go Packaging, Inc., for a packaging company in Texas; OKGO for digital art; OK GO Media, LLC for a media company in New York; CHINA OK GO for a restaurant in Henderson, Nevada; and OK GO Market for a retail marketplace in Oklahoma.

Cereal and cereal-based snack foods are certainly no closer to OK Go, Inc.'s entertainment services and sound recordings than the goods and services sold under these third party marks. Thus, despite its apparent success as a musical group, the fact is that OK Go, Inc.'s exclusive rights to its OK GO mark are rather limited, and likely don't extend beyond musical sound recordings, performances, and related merchandise. Such entertainment services are clearly distinguishable from cereal and cereal-based snacks such that there is no reasonable chance of consumer confusion.

Finally, I can assure you that no one at Post involved in the proposed use and registration of OK GO! (neither the creative team nor the legal team) had any knowledge or awareness of OK Go, Inc.'s prior collaboration with Post in 2011. It simply had and has no bearing on Post's decision to use and register OK GO! for cereal and cereal-based snacks. Given the length of time that has passed since that limited collaboration over a decade ago, the very small number of views indicated on the YouTube videos you referenced, and the general consuming public's rather short attention span, it will also have absolutely no bearing on consumer perception of Post's mark OK GO! used with cereal or cereal-based snacks, and will not lead to any mistaken association with OK Go, Inc.

Post has no interest in causing consumer confusion or drawing an association with OK Go, Inc. Post only intends to use OK GO! as a trademark for breakfast cereal and cereal-based snack foods. While this product has not yet launched, it is anticipated that Post's OK GO! mark would always be accompanied by the distinctive and well-known POST logo, as well as other secondary branding associated exclusively with Post's cereal products. These additional source indicators will make consumer confusion as to source virtually impossible.

Post shares OK Go, Inc.'s desire to resolve things amicably, and trusts that the above is helpful in that regard. If you have questions or would like to discuss, please feel free to call me.

Sincerely,

Thompson Coburn LLP

By

Thomas A. Polcyn

TAP/sal

27689335.1

# EXHIBIT 3



October 12, 2022

**By Email**

Alexander Kaplan
461 Fifth Avenue | 19th Floor
New York, New York 10017
Office: 212.951.1105
alex@oandzlaw.com | www.oandzlaw.com

Thomas A. Polcyn
Thompson Coburn LLP
One US Bank Plaza
St. Louis, MO 63101
tpolcyn@thompsoncoburn.com

Re:   **Post Foods, LLC Intent-to-Use Trademark Application for OK GO!**

Dear Tom:

We write in response to your letter dated September 20, 2022 (which you emailed to me on September 23, 2022).  Our client is disappointed by Post's refusal to abandon its application for the OK GO! mark and Post's apparent continued intent to use the mark in commerce.  Your letter misapprehends the likelihood of false association between OK Go and Post were Post to market cereals or snacks bearing the OK GO! mark.  It also mischaracterizes the strength and fame of our client's name and mark and the widespread recognition of the OK Go brand, including in commercial advertising for companies just like and including Post.

Your letter largely ignores that consumers are likely to falsely assume that your client is either associated with or endorsed by our client.  Instead, it focuses on a likelihood of confusion analysis between the parties' respective goods and services, asserting that the public will not conflate the source of a breakfast cereal with that of a rock band bearing the same name.  However, whether the relevant public will assume that your client is associated with or endorsed by our client does not depend on whether consumers will believe that your client's goods emanate from OK Go or on whether there is a relationship between our clients' respective goods and services.  Rather, the concern is that consumers will falsely assume that your client has some association with OK Go or that OK Go is endorsing your client's goods.  As explained in our previous letter, OK Go collaborates with large, well-known brands across a myriad of industries, including food.  OK Go's collaborations with household brands in advertising and marketing is widely known and heralded, such that the public has come to associate OK Go as a promoter of a wide variety of consumer products.  Indeed, an article in AdAge speaks to the value of such collaborations – "Perhaps the best product placement ever . . . The band OK Go have been among the smartest (and funniest) creators of viral media since viral media began."  As just one example of OK Go's impact, in its collaboration with Chevrolet, which debuted during Super Bowl XLVI, the advertisement got more views than the famous halftime show of the game itself.

Your letter vastly understates the fame and strength of the OK Go name and mark. Clearly, however, Post recognizes OK Go's fame and the value of an association with OK Go. As we've previously described, such a collaboration occurred between OK Go and Post with respect to an eight-episode series called "Honey and Joy" promoting Post's Honey Bunches of Oats cereal that was featured on the platform Bitbop. As previously noted, OK Go was the featured guest in an episode of the series and was also featured in the advertisement for the series. While your letter attempts to depreciate the strength and fame of our client's name and mark, your client's past association with our client suggests, to the contrary, that your client not only recognizes the value of an association with OK Go, but pursued such an association in the past because Post believes its consumers, and those consumers to whom it seeks to appeal, recognize and appreciate OK Go. Moreover, the episode itself gives nods to our client's fame where, among other references, Damian Kulash, the lead singer of OK Go says, "we are rock stars." Not only does this previous association make clear that Post recognizes the fame and widespread recognition of the band and the value of associating its brand with OK Go, but our client is concerned that this past association also makes a continued association of OK Go with OK GO! cereal and Post in the minds of consumers even more likely.

The OK GO name and mark has developed enormous good will and is strongly linked with OK Go in the public's mind. Also, as previously mentioned, the myriad music and advertising awards our client has won, the widespread viewing and appeal of its innovative music videos, and the numerous brand associations our client has had with major flagship brands (including Post) demonstrates that the name and mark OK Go is uniquely associated with our client. Moreover, a simple Google search of the term "OK GO" demonstrates the clear, unique association of the term with our client. The few third-party use and registration of marks that contain "OK GO" or variations thereof that your letter raises are either irrelevant or de minimis, and none of them have any bearing on the strength and widespread recognition of our client's name and mark. In contrast, because Post is a major consumer brand, with a previous association with OK GO, our client is especially concerned that Post's use and registration of OK GO! will falsely suggest a connection with our client, or that our client is approving or endorsing your client's goods. There is no use of OK GO besides our client's that has any widespread recognition and there are no other brands using the mark OK GO, other than our client, with which consumers would draw a false association if Post were to use the OK GO mark in connection with a cereal or snack food.

Accordingly, even if Post settled on OK GO as a mark without any awareness of the affiliation between the band and Post or a desire to evoke the band and its brand—a contention that we do not accept at this time—great concern is warranted were Post to proceed with use of the OK GO mark as intended. Your representations as to the anticipated look and feel of the OK GO cereal product and associated branding do not allay our client's concerns.[1]

As you are aware, we have received an extension to file an opposition to Post's intent to use application and our client will not hesitate to take any action that is necessary to protect its

---

[1] While your letter does not disclose whether Post will be targeting its new OK GO! cereal to children, adults, or both, we note that our client is well known to children as well as adults, including through OK Go's current extensive involvement in the Jack McBrayer Apple TV+ show, *Hello Jack-The Kindness Show* and their educational project, OK Go Sandbox.

2

OK Go name and mark.  We again demand that Post provide prompt written assurance that Post (i) will file an express abandonment of its trademark application for the OK GO! mark; (ii) will not seek to register any mark similar to OK GO in the future; and (iii) will not use at any time now or in the future the mark OK GO in any respect, or any other mark, word, or design that is confusingly similar to the OK Go name and mark.  We ask that you respond within ten days of the date of this letter.

This letter is written without prejudice to any of OK Go's rights and remedies, all of which are expressly reserved.

Sincerely yours,

/s/ Alex Kaplan

Alexander Kaplan